# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #004

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **28th day of January, 2015**, are as follows:

**BY HUGHES, J.**:

2014-C -1107    MARCUS MILLER v. HAROLD THIBEAUX,LAFAYETTE PARISH SCHOOL BOARD AND AMERICAN ALTERNATIVE INSURANCE CORPORATION (Parish of Lafayette)

Judge Scott J. Crichton, assigned as Justice ad hoc, sitting for Justice Jeffrey P. Victory, for oral argument. He now sits as an elected Associate Justice at the time this opinion is rendered.

For the reasons stated herein, we reverse the February 12, 2014 decision of the appellate court and reinstate the district court judgment, which denied the defendants' peremptory exceptions raising the objection of no right of action. The matter is remanded to the appellate court for consideration of the appeals filed following the April 16, 2013 district court judgment on the merits, in favor of the plaintiff, Marcus Miller.
APPELATE COURT REVERSED; DISTRICT COURT JUDGMENT REINSTATED; REMANDED.

GUIDRY, J., dissents.
CLARK, J., dissents with reasons.
CRICHTON, J., dissents for reasons assigned by Justice Clark.

01/28/15

# SUPREME COURT OF LOUISIANA

## NO. 2014-C-1107

## MARCUS MILLER

## VERSUS

## HAROLD THIBEAUX, LAFAYETTE PARISH SCHOOL BOARD AND AMERICAN ALTERNATIVE INSURANCE CORPORATION

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, THIRD CIRCUIT, PARISH OF LAFAYETTE

**HUGHES, J.***

The issue presented in this wrongful death and survival action is whether a putative father is entitled to seek filiation of his deceased minor child by simply alleging in his petition that he is the biological father of the child. Concluding that the appellate court erred in holding that the plaintiff/father alleged insufficient facts to constitute a filiation action, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

This case arose on March 14, 2011 when, unbeknownst to school bus driver Harold Thibeaux, six-year-old La'Derion Miller's arm became trapped in the school bus door while he was attempting to board the bus. La'Derion was dragged by the school bus some eighty feet, and, when his arm became dislodged from the door, he fell beneath the wheels of the bus and was critically injured. La'Derion died approximately forty minutes later.

La'Derion's mother, Heather Jagneaux, witnessed the accident from her front yard and heard La'Derion call out for her help, but she was unable to reach him.

*Judge Scott J. Crichton, assigned as Justice ad hoc, sitting for Justice Jeffrey P. Victory, for oral argument. He now sits as an elected Associate Justice at the time this opinion is rendered.

On May 16, 2011, Marcus Miller filed the instant action, individually and "on behalf of the estate of his deceased minor son," seeking to recover damages for the pain and suffering inflicted on La'Derion through the negligence of the bus driver, as well as for his own damages arising out of the wrongful death of his son.[1] Named as defendants in the suit were: Mr. Thibeaux; his insurer, Colony Specialty Insurance Company ("Colony");[2] his employer, Lafayette Parish School Board ("LPSB"); and, his employer's insurer, American Alternative Insurance Corporation ("AAIC").[3]

In AAIC's May 2012 answer to this suit, and among other defenses raised, it was alleged that the plaintiff's claims were "barred or limited to the extent that [plaintiff had] not complied with the procedural formalities that would allow him to bring this action as the legal father of La'Derion Miller."

AAIC, LPSB, and Mr. Thibeaux filed peremptory exceptions, in December of 2012, pleading the objection of no right of action as to the plaintiff's claims. The defendants contended that the plaintiff failed to establish, in accordance with LSA-C.C. art. 198, that he was the father of La'Derion and that he had the right to bring the instant action for wrongful death and survival damages pursuant to LSA-C.C. arts. 2315.1 and 2315.2.

Thereafter, the plaintiff filed a motion for judgment of paternity, alleging that: (1) his deceased son, La'Derion Miller, was born on January 11, 2005 in

---

[1] A separate suit was filed by La'Derion's mother, Heather Jagneaux, which was consolidated with the instant action in the district court.

[2] During the course of the consolidated proceedings, a mediation was conducted between Ms. Jagneaux, Mr. Miller, and Colony, resulting in a settlement in which Colony purportedly agreed to tender its $500,000 policy limits to Ms. Jagneaux in exchange for dismissal of her suit. Mr. Miller thereafter amended his petition to claim that Colony had not negotiated in good faith or dealt fairly with him, by settling its full policy limits on Ms. Jagneaux's damage claims alone, to the exclusion of his claims. In response to Mr. Miller's demand for discovery of the signed settlement agreement between Colony and Ms. Jagneaux, Colony countered that the agreement was confidential and not subject to discovery. We note that the appellate record does not show any further participation in the litigation by Ms. Jagneaux after the mediation, and the settlement agreement has not been made a part of the appellate record.

[3] AAIC was added to the suit by the plaintiff's March 9, 2012 amended petition.

Lafayette, Louisiana; (2) two days after the birth, on January 13, 2005, he and La'Derion's mother, Heather Jagneaux, executed an acknowledgment of paternity, which stated that he was the biological father of La'Derion; (3) his name appears on La'Derion's birth certificate; and (4) in an action filed by the State of Louisiana on May 12, 2009, to establish court-ordered child support, he was judicially determined to be the legal and biological father of La'Derion.[4] The plaintiff contended that, since he pled in his petition in the instant case that he was the biological father of La'Derion, the necessary material facts to constitute an avowal action were alleged, and the defendants were put on notice that he was seeking a judgment of paternity, even though he did not make a specific request for that relief, citing this court's decision in **Udomeh v. Joseph**, 11-2839 (La. 10/26/12), 103 So.3d 343.

Following a January 14, 2013 hearing on the defendants' exceptions and the plaintiff's motion for judgment of paternity, as well as on motions for partial summary judgment previously filed by the parties,[5] the district court denied the

---

[4] We note that the records of the child support enforcement action that appear in the record before this court do not support this allegation, as child support was awarded pursuant to the LSA-C.C. art. 196 presumption that arose from Mr. Miller's acknowledgment by authentic act of La'Derion as his child; the presumption can be invoked only on behalf of the child. "The man who executes the acknowledgment will not create a presumption in his own favor that he is the father of the child." LSA-C.C. art. 196, 2005 Revision Comment (a). However, pursuant to LSA-R.S. 9:392.1 and LSA-R.S. 9:405, "[i]n child support, custody, and visitation cases, the acknowledgment of paternity by authentic act is deemed to be a *legal finding of paternity* and is sufficient to establish an obligation to support the child and to establish visitation without the necessity of obtaining a *judgment of paternity*." (Emphasis added.) In the child support enforcement action, a finding of fact was made that Mr. Miller had a "legal obligation to support his minor child(ren)," and a judgment was rendered ordering him to pay child support, but no *judgment of paternity* was rendered.

[5] AAIC, LPSC, and Mr. Thibeaux filed motions for partial summary judgment in November 2012, seeking a ruling that a single statutory damage cap of $500,000 applied in this case, pursuant to LSA-R.S. 13:5106 of Louisiana's Governmental Claims Act (LSA-R.S. 13:5101 et seq.). The plaintiff filed a motion for partial summary judgment on December 20, 2012, seeking rulings from the district court that: (1) Mr. Thibeaux was an insured under the AAIC policy (citing LSA-R.S. 17:416.4(A), requiring a school board to fully indemnify a school board employee against whom a judgment has been rendered for negligence arising out of any action or omission that occurred in the proper course and scope of his duties); and (2) Mr. Thibeaux was not subject to the Governmental Claims Act statutory cap (asserting the instant action was brought pursuant to LSA-R.S. 17:439(D), excepting from the statutory civil immunity otherwise granted to school employees the negligence of any school employee operating a motor vehicle, to the extent that liability for such negligence was covered by insurance or self-insurance).

defendants' exceptions of no right of action and granted the plaintiff's motion for judgment of paternity, issuing a judgment decreeing that "Marcus Miller is found to be the biological and legal father of the minor child, La'Derion Miller."[6] Further, the motions for partial summary judgment filed by the defendants were denied, and the motion for partial summary judgment presented by the plaintiff was granted.

The defendants first sought relief from the appellate court by filing writ applications; however, writs were denied by the appellate court, which found no error in the district court ruling denying the defendants' exceptions of no right of action; "no irreparable injury" was found as to the rulings on the motions for summary judgment. As to the district court's granting of the plaintiff's motion for judgment of paternity, the appellate court ruled that an adequate remedy existed on appeal. See **Miller v. Thibeaux**, 13-CW-0137, 13-CW-0138, 13-CW-0183, 13-CW-0184 (La. App. 3 Cir. 3/22/13) (unpublished).[7]

---

[6] Although no witnesses testified at the hearing during which the paternity ruling was issued in favor of Marcus Miller, Mr. Miller submitted into evidence, without objection by the defendants, the following documentary evidence of paternity: a copy of La'Derion's birth certificate, showing Marcus Miller named as his father; a copy of an "Acknowledgment of Paternity Affidavit," executed on January 13, 2005 by Marcus Miller, stating that he was the biological father of La'Derion, but which contained the signature of only one witness (instead of the requisite two witnesses for an authentic act); a copy of an "Acknowledgment of Paternity Affidavit," executed on April 5, 2007 by Marcus Miller, before two witnesses, stating that he was the biological father of La'Derion; and copies of pleadings and court rulings in **State in the Interest of La'Derion J. Miller and Jaidon J. Miller, Minor Children of Heather Jagneaux v. Marcus Joseph Miller**, Docket No. 2009V60, 15th Judicial District Court, Vermilion Parish, including the "Petition and Rule to Show Cause Why Child Support Should not be Ordered Pursuant to LSA-R.S. 46:236.1," filed May 12, 2009, alleging Marcus Miller was the legal and biological father of the children via formal acknowledgment of paternity; the August 18, 2009 district court hearing officer recommendation of support, finding that "[d]efendant has a legal obligation to support to his minor child(ren)"; and an August 19, 2009 judgment signed by the district court judge, making the recommendations of the hearing officer the judgment of the court.

[7] Although the district court rulings on the parties' motions for partial summary judgment were rendered at the same time as the matters currently under consideration by this court, the summary judgment rulings have not been presented to this court for review. As indicated, in March of 2013, the appellate court denied writs on the matters ruled on by the district court following the January 14, 2013 hearing. In the defendants' subsequent appeal of the judgment of paternity and the grant of the plaintiff's motion for partial summary judgment, and, after reversing the district court denial of the defendants' no right of action exception and dismissing the plaintiff's suit, the appellate court found it unnecessary to consider the assignment of error urged as to the partial summary judgment rendered in the plaintiff's favor by the district court. See **Miller v.**

4

On subsequent appeal, the appellate court ruled that the plaintiff failed to present "sufficient allegations of fact to state a cause of action for filiation, as [his petition contained] only the bare allegation that [he] was the biological father of La'Derion." Accordingly, the appellate court reversed the judgment of the district court, which had denied the defendants' exceptions of no right of action, and rendered judgment dismissing the plaintiff's action for wrongful death and survival damages, with prejudice. See **Miller v. Thibeaux**, 13-1029 (La. App. 3 Cir. 2/12/14), ___ So.3d ___.[8]

This court granted the plaintiff's subsequent writ application to determine whether the appellate court properly interpreted and applied the principles announced in **Udomeh v. Joseph**. See **Miller v. Thibeaux**, 14-1107 (La. 10/3/14), 149 So.3d 276.

## LAW AND ANALYSIS

Plaintiff's Right of Action

Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest, which he asserts. LSA-C.C.P. art. 681. See also **Reese v. State Department of Public Safety and Corrections**, 03-1615 (La. 2/20/04), 866 So.2d 244, 246. The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom

---

**Thibeaux**, ___ So.3d at ___. Furthermore, the plaintiff has presented only two assignments of error to this court: (1) the appellate court erred in reversing the district court's denial of the defendants' exceptions pleading the objection of no right of action; and (2) the appellate court erred in failing to consider the assignment of error that the district court abused its discretion in the general damages awarded, which he contends were abusively low.

[8] We note that after the May 2013 appellate court writ denials, but prior to the appellate court's subsequent February 2014 decision on appeal of these issues, the district court held a bench trial on the merits of the plaintiff's wrongful death and survival action in April 2013. After trial, judgment was rendered in favor of the plaintiff in the amounts of $50,000 for his survival claim and $250,000 for his wrongful death claim. Following rendition of that judgment, the plaintiff filed a devolutive appeal to contest the amounts awarded, and the defendants filed suspensive appeals. There is no indication in the record presented to this court that these appeals were litigated to conclusion, presumably since the February 2014 appellate court decision reversing the district court's denial of the defendants' exceptions of no right of action and dismissing the plaintiff's action with prejudice, rendered the continued appeal of the judgment on the merits moot.

5

the law grants the cause of action asserted in the suit. **Id.** (citing LSA-C.C.P. art. 927). The focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit, but it assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. **Id.** For purposes of the exception, all well-pleaded facts in the petition must be taken as true. **Eagle Pipe and Supply, Inc. v. Amerada Hess Corporation**, 10-2267 (La. 10/25/11), 79 So.3d 246, 253.

In the petition filed in the instant case, the plaintiff referred to La'Derion as his "son" and specifically alleged that he was "the biological father of the deceased, La'Derion Miller." The district court ruled, as stated in written reasons issued January 26, 2013, that the plaintiff alleged sufficient facts in his wrongful death petition to put defendants on notice that his paternity was at issue pursuant to our recent decision in **Udomeh v. Joseph**.

In reversing the district court's determination that the plaintiff had alleged sufficient facts in his petition to put the defendants on notice that his paternity was at issue, the appellate court found persuasive the defendants' argument that Mr. Miller had not timely filed an avowal action and, thus, had no right to pursue an action for wrongful death and survival damages. Although the appellate court acknowledged this court's holding in **Udomeh** that, if a plaintiff files a personal injury petition within one year of his illegitimate child's death and alleges sufficient facts in the petition to state an avowal action to provide notice to the defendant(s) of the issue of his paternity, then a timely action for filiation has been commenced. See **Udomeh v. Joseph**, 103 So.3d at 348-52. Notwithstanding, the appellate court in this case concluded that the plaintiff's original and first amended petitions, though filed within a year of La'Derion's death, did not contain sufficient allegations of fact to state a cause of action for filiation, as Mr. Miller

6

had alleged *only* that he was the biological father of La'Derion.

This court concluded in **Udomeh** that the filiation provisions of LSA-C.C. art. 198[9] apply to actions under LSA-C.C. arts. 2315.1 and 2315.2; therefore, a putative father must file a timely avowal action in order to maintain a wrongful death and survival action for the death of his illegitimate child. See **Udomeh v. Joseph**, 103 So.3d at 348. Further, **Udomeh** recognized that the temporal limitations of LSA-C.C. art. 198 are peremptive, such that amendment of a petition so that it relates back to the filing date of the original petition is not allowed to avoid the running of the peremptive period. **Id**.

However, we also recognized in **Udomeh** that a plaintiff need only plead the material facts necessary to state an avowal action to give fair notice to the defendant(s) that his paternity is at issue in the action. **Id**. As stated in **Udomeh**, Louisiana's Code of Civil Procedure uses a system of pleading based upon the narration of factual allegations. No technical forms of pleading are required. All allegations of fact of the petition, exceptions, or answer shall be simple, concise, and direct, and shall be set forth in numbered paragraphs, as required by LSA-C.C.P. art. 854.[10] Pursuant to LSA-C.C.P. art. 862,[11] except in cases of a default

---

[9] LSA-C.C. art. 198 states:

> A man may institute an action to establish his paternity of a child at any time except as provided in this Article. The action is strictly personal.

> If the child is presumed to be the child of another man, the action shall be instituted within one year from the day of the birth of the child. Nevertheless, if the mother in bad faith deceived the father of the child regarding his paternity, the action shall be instituted within one year from the day the father knew or should have known of his paternity, or within ten years from the day of the birth of the child, whichever first occurs.

> In all cases, the action shall be instituted no later than one year from the day of the death of the child.

> The time periods in this Article are peremptive.

[10] Article 854 provides:

> No technical forms of pleading are required.

judgment, a final judgment must grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and there has been no prayer for general and equitable relief. Article 862 permits courts to render substantive justice on the basis of facts pled and to refuse to permit a denial of substantive rights due to technical defects of language or characterization of the case. So long as the facts constituting the claim or defense have been alleged and proved, the party may be granted any relief to which he is entitled under the fact pleadings and evidence, when the due process requirement of adequate notice to the parties of the matters to be adjudicated has been satisfied. See **Udomeh v. Joseph**, 103 So.3d at 348-49.

Furthermore, although Article 862 abolished the theory-of-the-case pleading requirement, Article 891 provides that a petition "shall contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation."[12] In order to plead "material facts" within Louisiana's fact-pleading system, the pleader must state what act or omission he will establish at trial. **Udomeh v. Joseph**, 103 So.3d at 349.

---

All allegations of fact of the petition, exceptions, or answer shall be simple, concise, and direct, and shall be set forth in numbered paragraphs. As far as practicable, the contents of each paragraph shall be limited to a single set of circumstances.

[11] Article 862 provides:

Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.

[12] Article 891(A) provides:

The petition shall comply with Articles 853, 854, and 863, and, whenever applicable, with Articles 855 through 861. It shall set forth the name, surname, and domicile of the parties; shall contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation; shall designate an address, not a post office box, for receipt of service of all items involving the litigation; and shall conclude with a prayer for judgment for the relief sought. Relief may be prayed for in the alternative.

As in **Udomeh**, the plaintiff herein stated in his petition that he was the biological father of the deceased minor child. In **Udomeh**, we concluded that, because the plaintiff had alleged a biological relationship between himself and the child, he had set forth the material facts necessary for an avowal action. **Udomeh** reaffirmed this court's prior holding in **Reese**, 866 So.2d at 250, that "bare allegations" set forth in a plaintiff's initial petition for wrongful death damages gave the defendants adequate notice of an avowal action.[13] See **Udomeh v. Joseph**, 103 So.3d at 349.

A party is entitled to any relief available based on the facts pled, regardless of the specific relief requested. **Udomeh v. Joseph**, 103 So.3d at 351. Thus, the failure of a putative father to request a finding of filiation does not prevent a court from rendering a judgment of paternity based on the facts pled. Within the context of a wrongful death and survival action, the putative father's allegations of biological paternity of the decedent child can be reasonably construed as stating an avowal action, as there was no other purpose an allegation of paternity could have served. See **id.**

We concluded in **Udomeh** that the plaintiff's bare allegations of paternity adequately stated an action to establish filiation, even though there was no specific request for a judgment of paternity. See **Udomeh v. Joseph**, 103 So.3d at 350-53. By alleging his biological paternity of the child in his wrongful death and survival petition, the plaintiff provided the defendants fair notice of the issue of filiation in this case. See **Udomeh v. Joseph**, 103 So.3d at 353. Thus, under LSA-C.C.P. art.

---

[13] In **Reese**, the decedent's surviving children filed suit for wrongful death and survival damages; the defendants filed a peremptory exception raising the objection of no right of action, claiming that the plaintiffs were without a legal right of action since they were not the legitimate children of the decedent and they had failed to timely file a filiation action. **Reese v. State Department of Public Safety and Corrections**, 866 So.2d at 246. Although **Reese** involved a prescriptive rather than peremptive period, the holding that the bare allegations in the plaintiffs' petition (showing the children each had a different last name from that of the decedent, naming the decedent as their father, and indicating they were the decedent's sole surviving children) were found sufficient to put the defendants on notice that filiation was at issue in that case. **Id.** at 250.

862, a court could grant plaintiff a judgment of paternity, provided the plaintiff proved he was entitled to such relief. **Id.**

Likewise, in the instant case, we conclude that the plaintiff's bare allegations of biological paternity were sufficient to state an action to establish filiation, as there was no other purpose an allegation of biological paternity could have served, and the defendants received fair notice of the issue of filiation.

We reject the defendants' attempt to distinguish **Udomeh** on the facts. Defendants point to Mr. Udomeh's allegation that, not only was he the deceased child's biological father, but that he had also acknowledged and provided support for his minor child during the child's life. While we mentioned the allegations of acknowledgment and child support in the **Udomeh** opinion, it was in the context of enumerating the allegations pled by Mr. Udomeh that were *in addition to* the basic material facts of filiation. In comparing the allegations made by Mr. Udomeh with those made by the **Reese** plaintiffs, this court was simply noting the extent to which Mr. Udomeh's petition "exceed[ed] the bare allegations" made by the **Reese** plaintiffs. See **Udomeh v. Joseph**, 103 So.3d at 350-51. In making such a comparison, this court was not implying that support and acknowledgment were allegations necessary to state an action for filiation.

We further noted in **Udomeh** that the holding announced therein did not offend the policies underlying LSA-C.C. art. 198, particularly with respect to the statute's one-year peremptive period, one purpose of which, as stated in LSA-C.C. art. 198, 2005 Official Revision Comment (d), was to prevent a father who failed "to assume his parental responsibilities" during the child's lifetime from having "unlimited time to institute an action to benefit from the child's death." See **Udomeh v. Joseph**, 103 So.3d at 351. A plaintiff who has *timely* filed (within the one-year period) an action that seeks filiation has not delayed exercising his parental rights for an "unlimited time," and thus has not run afoul of this

10

restriction.

The defendants cite the following jurisprudence as additional authority for the contention that an allegation of a biological relationship by a father to his illegitimate child is not enough to constitute an avowal action and that a father must also allege that he had maintained an "actual relationship" with his child: **Smith v. Cole**, 553 So.2d 847 (La. 1989); **Parker v. Buteau**, 99-0519 (La. App. 3 Cir. 10/13/99), 746 So.2d 127; **Bolden v. Rodgers**, 99-0417 (La. App. 5 Cir. 9/28/99), 746 So.2d 88; **Geen v. Geen**, 95-0984 (La. App. 3 Cir. 12/27/95), 666 So.2d 1192, writ denied, 96-0201 (La. 3/22/96), 669 So.2d 1224; **Putnam v. Mayeaux**, 93-1251 (La. App. 1 Cir. 11/10/94), 645 So.2d 1223; **Smith v. Jones**, 566 So.2d 408 (La. App. 1 Cir.), writ denied sub nom. **Kemph v. Nolan**, 569 So.2d 981 (La. 1990).

However, such statements in these cases arose under prior law. See **W.R.M. v. H.C.V.**, 06-0702 (La. 3/9/07), 951 So.2d 172, 173-74 (per curiam) (Justice Johnson, concurring). In concurring with the majority opinion (which held that the plaintiff/father's petition to establish filiation was subject to dismissal, as untimely, since it had not been filed within the period established by 2004 La. Acts, No. 530, which was enacted and made retroactive after the filing of the petition for filiation in that case), Justice Johnson pointed out that, prior to Act No. 530's enactment of LSA-C.C. art. 191's two-year peremptive period for bringing an avowal action,[14] filiation by a putative father was a judicially-recognized action *only* and was required to be filed within a "reasonable" period of time from the birth of the child. See **W.R.M. v. H.C.V.**, 951 So.2d at 173-74 (Justice Johnson, concurring). Thus, the defendants' cited cases (listed hereinabove), which were rendered prior to the 2004 enactment of a peremptive period for the filing of an avowal action,

---

[14] Article 191 was renumbered and reenacted as LSA-C.C. art. 198 by 2005 La. Acts, No. 192. See **W.R.M. v. H.C.V.**, 951 So.2d at 175 (Justice Johnson, concurring).

11

discussed the standard for determining when an avowal suit was instituted within a reasonable period of time under the then-existing jurisprudential law, a substantial factor of which analysis was whether the putative father had an actual relationship with the child.  See **Smith v. Cole**, 553 So.2d at 851; **Parker v. Buteau**, 746 So.2d at 129 ("[A] biological father who knows or has reason to know of the existence of his biological child, and who fails to assert his rights for a significant period of time, cannot later come forward and assert paternity."); **Bolden v. Rodgers**, 746 So.2d at 92 ("There is no prescription statute applicable to a father's action to avow his biological child . . . . The right of avowal is not absolute, however.  It is the actual relationship with the child that is determinative, not the mere biological connection."); **Geen v. Geen**, 666 So.2d at 1194-95; **Putnam v. Mayeaux**, 645 So.2d at  1225-26 ("After reviewing the testimony, it is clear that [the putative father had] no relationship with his alleged biological child.  However, [the putative father] filed the paternity action one year and three days following the birth of the child, which we believe to be 'within a reasonable time of the child's birth,' considering that, within that year, he attempted unsuccessfully to see the child, he offered to provide for the child, and he attempted to get [the child's mother] and the child to submit to blood tests. Therefore, [the putative father's] avowal action was timely."); **Smith v. Jones**, 566 So.2d at 414.

Because the time limit for the filing of an avowal action is now expressly set forth in Civil Code Article 198, this codal article governs, and the prior jurisprudential standard is no longer relevant.  See LSA-C.C. art. 1 ("The sources of law are legislation and custom."); LSA-C.C. art. 2 ("Legislation is a solemn expression of legislative will."); LSA-C.C. art. 3 ("Custom results from practice repeated for a long time and generally accepted as having acquired the force of law. Custom may not abrogate legislation."); LSA-C.C. art. 1, 1987 Revision Comment (a) ("Articles 1 and 3 of the Louisiana Civil Code of 1870 make it clear

12

that the sources of law in Louisiana are legislation and custom. However, as in all codified systems, legislation is the superior source of law in Louisiana."). See also **W.R.M. v. H.C.V.**, 951 So.2d at 176 (recognizing that the cases defendants now cite represent statements of prior law) (Justice Johnson, concurring).[15]

Accordingly, we conclude the appellate court erred in reversing the district court's denial of the defendants' peremptory exceptions pleading the objection of no right of action.

Request for Review of Damages Awarded

In his brief, the plaintiff has asked this court to review the damage amounts awarded to him by the district court, which he contends were abusively low. However, the instant writ was granted only to review the district court's January 2013 pre-trial rulings, related to the plaintiff's paternity claim, and we find it procedurally inappropriate to address issues raised by the plaintiff in his separate and subsequent post-trial appeal.

As we indicated hereinabove, while appellate review of the January 2013 pre-trial rulings was ongoing, the district court proceeded with the trial on the merits in April 2013 and, following the bench trial, rendered judgment in the plaintiff's favor. The plaintiff and the defendants timely perfected appeals from that April 2013 decision, AAIC timely posted its suspensive appeal bond, and return dates were fixed by the district court.[16] The record before this court does not

---

[15] We also reject jurisprudence cited by AAIC: **In re Succession of Morris**, 13-533 (La. App. 5 Cir. 12/12/13), 131 So.3d 274 (involving filiation by an adult child to his deceased father for succession purposes); **Caceras v. Work**, 12-1097 (La. App. 4 Cir. 2/27/13), 110 So.3d 275 (holding, in a wrongful death action, that the putative father's petition set forth sufficient facts to be construed as an action for filiation as well as a petition for damages); **Thomas v. Ardenwood Properties**, 10-0026 (La. App. 1 Cir. 6/11/10), 43 So.3d 213, writ denied, 10-1629 (La. 10/8/10), 46 So.3d 1271 (holding that a putative father's amended petition, to assert paternity of his deceased illegitimate child, filed after the one-year peremptive period had expired, could not relate back to the timely-filed wrongful death petition). Though decided under current law, these cases do not support the defendants' position relative to the issue currently before the court.

[16] For the plaintiff's devolutive appeal and AAIC's suspensive appeal, the return dates were set for "45 days after payment of costs." For the appeal filed by LPSB and Mr. Thibeaux, the return date was set for July 8, 2013.

reflect what, if anything, was filed with the appellate court in connection with these post-trial appeals or whether the appellate court issued any ruling in connection with the post-trial appeals. However, counsel for the parties indicated at the oral argument of the instant matter that, because the appellate court's February 12, 2014 action, reversing the district court's pre-trial paternity-related ruling on the exception of no right of action and dismissing the plaintiff's action, with prejudice, nullified the trial award in the plaintiff's favor, the post-trial appeals were deemed moot. Because we reverse herein the February 12, 2014 appellate court decision, the plaintiff's trial award is reinstated, and the parties' post-trial appeals are no longer moot. Therefore, the matter should be remanded to the appellate court for consideration of the post-trial appeals.

## CONCLUSION

A putative father's allegations of biological paternity of his decedent child, in a wrongful death action, provide notice to the defendant(s) that paternity is an issue in the case and can be reasonably construed as stating an action for filiation. See **Udomeh v. Joseph**, 103 So.3d at 350-53.

## DECREE

For the reasons stated herein, we reverse the February 12, 2014 decision of the appellate court and reinstate the district court judgment, which denied the defendants' peremptory exceptions raising the objection of no right of action. The matter is remanded to the appellate court for consideration of the appeals filed following the April 16, 2013 district court judgment on the merits, in favor of the plaintiff, Marcus Miller.

**APPELATE COURT REVERSED; DISTRICT COURT JUDGMENT REINSTATED; REMANDED.**

14

01/28/15

SUPREME COURT OF LOUISIANA

NO. 2014-C-1107

MARCUS MILLER

VERSUS

HAROLD THIBEAUX, LAFAYETTE PARISH SCHOOL BOARD
AND AMERICAN ALTERNATIVE INSURANCE CORPORATION

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF LAFAYETTE

Clark, J. dissenting with reasons.

I respectfully dissent. The majority holds the allegations in Miller's petition are sufficient to state a cause of action for filiation because they provide fair notice to the defendants that paternity is at issue. Accordingly, it finds Miller has a right of action for wrongful death and survival damages. For the following reasons, I disagree.

To recover under a claim for wrongful death and survival, a plaintiff must fall within the class of persons designated as a beneficiary under La.Civ.Code arts. 2315.1 and 2315.2. *Turner v. Busby*, 03-3444, p. 4 (La. 9/9/04), 883 So.2d 412, 416. When the decedent leaves no surviving spouse or child, the decedent's surviving father and mother are the proper beneficiaries entitled by law to bring these actions.

Filiation is the legal relationship between a child and his parent. La.Civ.Code art. 178. Filiation is established by proof of maternity, paternity, or adoption. La.Civ.Code art. 198 provides, in relevant part:

> A man may institute an action to establish his paternity of a child at any time except as provided in this Article.
> . . .
>
> In all cases, the action shall be instituted no later than one year from the day of the death of the child.

Thus, a father must timely file an avowal action pursuant to La.Civ.Code art. 198 in order to bring a wrongful death and survival action. Miller could only have a right of action in the instant case if his petition in the wrongful death and survival action could be said to constitute the institution of an avowal action. Otherwise, the peremptive period ran and he would not fit into the limited categories of those who can file suit under La.Civ.Code arts. 2315.1 and 2315.2. The instant case, then, asks us to determine what is sufficient to plead an avowal action.

As acknowledged by Chief Justice Kimball in her dissent in *Udomeh v. Joseph*, 11-2839, p. 3 (La. 10/26/12), 103 So.3d 343, 353, merely pleading conclusory statements is insufficient to state a cause of action. Reciting a conclusion without pleading any specific facts to support that conclusion is insufficient to constitute a material fact under Louisiana's fact-pleading system, which "requires the pleader to state what act or omission he or she will establish at trial." *Greemon v. City of Bossier City*, 10-2828, 11-0039 (La. 7/1/11), 65 So.3d 1263. In the case at hand, Miller only alleged that he was the biological father of the deceased child. This bare allegation, in an actual avowal action, without the accompaniment of supporting facts or evidence would not be enough to set forth a cause of action for avowal. Making the same minimal allegation in a petition for wrongful death and survival damages, is not sufficient, either. The conclusory claim of biological filiation cannot be considered a material fact that states "what act or omission would be established at trial" because the pleader, Miller, does not actually intend to prove his filiation at trial. Rather, he intends to prove only the elements of the wrongful death and survival actions. This fact is evidenced by the separate judgment of paternity Miller sought that is not directly before us.

The majority focuses on notice as being the determinative factor of whether an avowal action was sufficiently pled. Specifically, it asks whether the defendants were put on notice that Miller's paternity was at issue. However, La.Civ.Code art.

2

198 strictly requires that an avowal action be *instituted* within the year of a decedent's death. This provision regarding peremption was added to ensure that a father who failed to assume his parental obligations during the life of a child did not benefit from the child's death in an unrestricted way. When constructing this peremptive time period, the legislature did not say notice must be given that the father's paternity is at issue. Rather, it provided that an action for avowal must be instituted. Thus, in order to prove filiation and thereby receive the right to sue for wrongful death and survival damages, the legislature required more than the passive act of giving notice to defendants by way of filing the wrongful death and survival action---the very action that it sought to prevent a putative father who has not proven filiation from bringing in the first place.

Last, I note that an avowal action is not an absolute right. Any limitations placed on it, temporal or otherwise, are allowed and act to further the legislative purpose and public policy.

Thus, I respectfully find that merely alleging one's biological filiation without more in a petition for a wrongful death and survival action does not constitute instituting an avowal action. Thus, I would have affirmed the appellate court's ruling that Miller did not have a right of action.

SUPREME COURT OF LOUISIANA

NO. 2014-C-1107

MARCUS MILLER

VERSUS

HAROLD THIBEAUX, LAFAYETTE PARISH SCHOOL BOARD
AND AMERICAN ALTERNATIVE INSURANCE CORPORATION

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF LAFAYETTE


Crichton, J., dissents for the reasons assigned by Justice Clark