# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT
### 13-541 c/w 13-1029


**MARCUS MILLER**

**VERSUS**

**HAROLD THIBEAUX, LAFAYETTE PARISH SCHOOL BOARD AND AMERICAN ALTERNATIVE INSURANCE CORPORATION**

\*\*\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20112778
HONORABLE KRISTIAN EARLES, DISTRICT JUDGE

OPINION ON REMAND

\*\*\*\*\*\*\*\*\*\*\*\*

**DAVID KENT SAVOIE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Billy H. Ezell, Shannon J. Gremillion, and David Kent Savoie, Judges.


**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**

Tonya R. Smith
Kathy L. Smith
Borne & Wilkes, L.L.C.
200 West Congress Street, Suite 1000
Post Office Box 4305
Lafayette, LA 70502-4305
COUNSEL FOR DEFENDANTS-APPELLANTS/CROSS APPELLEES:
    Harold Thibeaux and Lafayette Parish School Board

Dawn L. Morris
The Dill Firm
825 Lafayette Street
Lafayette, LA 70501
COUNSEL FOR DEFENDANTS-APPELLANTS/CROSS APPELLEES:
    Harold Thibeaux and Lafayette Parish School Board

Robert I. Siegel
Christopher R. Teske
Tara E. Clement
Gieger, Laborde & Laperouse, L.L.C.
Suite 4800 – One Shell Square
701 Poydras Street
New Orleans, LA 70139-4800
COUNSEL FOR DEFENDANT-APPELLANT/CROSS APPELLEE:
    American Alternative Insurance Corporation

Derriel C. McCorvey
S. Marie Johnson
The Law Office of Derriel C. McCorvey, L.L.C.
115 W. Main Street, Suite 14
Post Office Box 2473
Lafayette, LA 70502
COUNSEL FOR PLAINTIFF-APPELLEE/CROSS APPELLANT
    Marcus Miller

**SAVOIE, Judge.**

We consider this matter on remand from the supreme court following its decision in *Miller v. Thibeaux*, 14-1107 (La. 1/28/15), 159 So.3d 426. After reinstating the district court's denial of Defendants-Appellants' exceptions of no right of action, the supreme court ordered that we consider the remaining issues raised by the parties on appeal.

After complying with the supreme court's order, we reverse the trial court's partial summary judgment granted in favor Mr. Miller, render partial summary judgment in favor of Defendants-Appellants limiting Mr. Miller's damages to the statutory cap set forth by La.R.S. 13:5106, and remand for proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

The instant matter stems from the tragic death of six-year-old La'Derion Miller as a result of a school bus accident that occurred in Youngsville, Louisiana on March 14, 2011. As La'Derion attempted to board the school bus, the door closed on his arm. Ultimately, he was unable to free himself, tripped and fell on the road, and was then run over by the bus. He was taken to the hospital, unresponsive, and pronounced dead approximately forty-five minutes after the accident.

Separate lawsuits were filed by La'Derion's mother, Heather Jagneaux, as well as Marcus Miller, who alleges that he is La'Derion's father. The two lawsuits were consolidated for trial. Ms. Jagneaux's lawsuit was dismissed on May 17, 2012, following a settlement.

Mr. Miller's original "Petition for Wrongful Death, Survival Action and Damages" named as Defendants Harold Thibeaux, the driver of the school bus; Colony Insurance Company (Colony), Mr. Thibeaux's alleged insurer; and

Lafayette Parish School Board (LPSB), Mr. Thibeaux's employer. Mr. Miller subsequently amended his petition to name American Alternative Insurance Company ("AAIC"), LPSB's insurer, as a defendant. Mr. Miller also amended his petition to assert additional claims against Colony based on an alleged breach of its duty of good faith when it paid the entire policy limit to Ms. Jagneaux, without submitting an equal payment to him.

On February 12, 2012, prior to the dismissal of Ms. Jagneaux's action, the trial court rendered a partial summary judgment in favor of LPSB limiting its liability for both Ms. Jagneaux's *and* Mr. Miller's claims to a single $500,000 cap on damages pursuant to La.R.S. 13:5106.

Mr. Miller's claims against Colony were dismissed with prejudice on July 25, 2012, after the trial court sustained Colony's exception of no cause of action.

In November 2012, LPSB, Mr. Thibeaux, and AAIC (collectively "Defendants") filed motions for partial summary judgment seeking a determination that the statutory cap on damages provided by La.R.S. 13:5106 also applied to Mr. Miller's claims against Mr. Thibeaux. In January 2013, Mr. Miller filed a cross-motion for partial summary judgment seeking a determination that the statutory cap on damages did not apply to the claims against Mr. Thibeaux, and, therefore, also did not apply to the claims against LPSB and AAIC.

A hearing on Defendants' exceptions of no right of action, Mr. Miller's "Motion for Judgment on Paternity," and the parties' cross-motions for summary judgment was held on January 14, 2013. The trial court denied Defendants' exceptions of no right of action and Defendants' motions for partial summary judgment. The trial court further granted Mr. Miller's "Motion for Judgment on Paternity" as well as Mr. Miller's motion for partial summary judgment.

2

A bench trial was held April 2-3, 2013. The parties stipulated that Mr. Thibeaux was solely at fault. The trial court rendered judgment in favor of Mr. Miller awarding $50,000 in damages for his survival action and $250,000 in damages for his wrongful death claim. In addition, Mr. Miller was awarded court costs, expert witness fees, and judicial interest.

Defendants appealed seeking review of (1) the trial court's denial of their exception of no cause of action, (2) the trial court's judgment granting Mr. Miller's "Motion for Judgment of Paternity," (3) the trial court's partial summary judgment in favor of Mr. Miller, and (4) the trial court's denial of their cross-motions for partial summary judgment. Defendants also assert that any damages awarded should be reduced to $225,000, as that is the remaining amount of the statutory cap on damages provided by La.R.S. 13:5106 that is available after taking into consideration amounts paid to Ms. Jagneaux. Mr. Miller has also appealed asserting that the amount of damages awarded was abusively low.

When we initially considered this matter in *Miller v. Thibeaux*, 13-1029 (La.App. 3 Cir. 2/12/14), 153 So.3d 1134, we reversed the trial court's denial of the Defendants' exception of no right of action, finding that Mr. Miller had not timely asserted an avowal action, and we dismissed Mr. Miller's claims. After granting writs, the supreme court reinstated the trial court's denial of Defendants' exceptions of no right action, concluding that Mr. Miller's "allegations of biological paternity of his decedent child, in a wrongful death action, provide[d] notice to the defendant(s) that paternity is an issue in the case and can be reasonably construed as stating an action for [avowal]." *Miller*, 159 So.3d at 435. We now consider the remaining issues on appeal.

**ANALYSIS**

3

## 1. Judgment of Paternity

We first note that the trial court erred in rendering the judgment of paternity in connection with Mr. Miller's "Motion for Judgment of Paternity" on January 14, 2013. We question the procedure by which Mr. Miller sought to establish *before trial* the merits of his avowal action filed in connection with his wrongful death and survival action. Moreover, no evidence was formally offered or accepted into the record in connection with his motion.[1] However, we find this deficiency was cured at the trial on merits held in April 2013, wherein both Mr. Miller and La'Derion's mother, Heather Jagneaux, unequivocally, and without contradiction, testified that Mr. Miller was in fact La'Derion's father. Therefore, Mr. Miller adequately established paternity for purposes of his avowal action and wrongful death and survival claims.

## 2. Summary Judgment Regarding Statutory Cap On Damages

We next consider Defendants' appeal of the trial court's rulings granting partial summary judgment in favor of Mr. Miller and denying Defendants' cross-motions for partial summary judgment on the issue of the statutory cap on damages. While generally a trial court's denial of a motion for summary judgment is not appealable, it may be reviewed in connection with the appeal of a final judgment. *In re Succession of Carlton,* 11-288 (La.App. 3 Cir. 10/5/11), 77 So.3d 989, *writ denied*, 11-2840 (La. 3/2/12), 84 So.3d 532.

---

[1] While the trial court and the parties discussed a purported acknowledgment of paternity and documents pertaining to previous child support proceedings that were attached to Mr. Miller's motion, an extensive review of the record shows that no evidence was formally offered or admitted in connection with this motion. Therefore, it was improper for these documents to be considered by the trial court, and we cannot consider any of the attachments to Mr. Miller's motion on appeal. *Denoux v. Vessel Mgmt. Services, Inc.*, 07-2143, p. 6 (La. 5/21/08), 983 So.2d 84, 88. Moreover, the supreme court made clear in *Miller*, 159 So.3d 428, that the former child support award against Mr. Miller did not equate to a judgment of paternity for purposes of his avowal action.

Defendants assert that the trial court erred in concluding that Mr. Miller's claims against Defendants were exempted from the statutory cap on damages provided by La.R.S. 13:5106, which is part of the "Louisiana Governmental Claims Act" (LGCA). Louisiana Revised Statutes 13:5106(B)(2) states that:

> The total liability of the state and political subdivisions for all damages for wrongful death of any one person, including all claims and derivative claims, exclusive of property damages, medical care and related benefits and loss of earnings or loss of support, and loss of future support, as provided in this Section, shall not exceed five hundred thousand dollars, regardless of the number of suits filed or claims made for the wrongful death of that person.

> A "derivative claim" includes a claim for survival. La.R.S. 13:5106(D)(4).

It is undisputed that LPSB is a political subdivision as defined by La.R.S. 13:5102(B)(1).

> As set forth by La.R.S. 13:5101(B), the LGCA applies

> to any suit . . . for injury to person . . . against the state, a state agency, an officer or employee of the state or a state agency arising out of the discharge of his official duties or within the course and scope of his employment, or a political subdivision of the state, as defined herein, or against an officer or employee of a political subdivision arising out of the discharge of his official duties or within the course and scope of his employment.

According to Defendants, one cap is applicable to both Mr. Miller's and Ms. Jagneaux's wrongful death and survival claims. On the other hand, Mr. Miller contends Defendants are liable to him for the full amount of the damages awarded and that the statutory cap is not applicable because (1) La.R.S. 17:439(D) allows a direct action against Mr. Thibeaux, and (2) La.R.S. 17:416.4 requires LPSB to fully indemnify Mr. Thibeaux against any judgment. We agree with Defendants.

***Summary Judgment Standard of Review:***

As we explained in *Tyler v. Dejean*, 12-1421, p. 2 (La.App. 3 Cir. 8/7/13), 121 So.3d 204, 207, *writ denied*, 13-2586 (La. 1/27/14), 131 So.2d 62:

5

Appellate courts review a judgment granting or denying a motion for summary judgment *de novo*. *Cutsinger v. Redfern*, 08-2607 (La. 5/22/09), 12 So.3d 945, 949 (citing *Bonin v. Westport Ins. Corp.*, 05-0886 (La. 5/17/06), 930 So.2d 906, 910). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law." La.[Code. Civ.P.] art. 966(B); *Cutsinger*, 12 So.3d at 949. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of actions. La.[Code. Civ.P.] art. 966(A)(2); *Cutsinger*, 12 So.3d at 949. Thus, we ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. *Cutsinger*, 12 So.3d at 949 (citing *Smith v. Our Lady of the Lake Hosp.*, 93-2512 (La. 7/5/94), 639 So.2d 730, 750).

### *Applicability of La.R.S. 17:439(D):*

Prior to addressing whether La.R.S 17:439(D) and La.R.S. 17:416.4[2] collectively create an exception to the statutory cap on damages afforded by La.R.S. 13:5106, we first must determine the extent to which Mr. Miller has a direct claim against Mr. Thibeaux under La.R.S. 17:439(D).

Louisiana Revised Statutes 17:439(A) generally prohibits

a cause of action against any school employee based on any statement made or action taken by the school employee provided that the action or statement was within the course and scope of the school

---

[2] Louisiana Revised Statutes 17:416.4(A) states,

In addition to the provisions of [La.]R.S. 17:416.1(C), 416.3(B) and (C)(2)(a), and 416.6(B), should any public school employee be sued for damages by any student or any person qualified to bring suit on behalf of any student based on any action or statement or the omission of any action or statement by such employee when in the proper course and scope of his duties as defined by the school board employing such employee, then it shall be the obligation of said school board to provide such defendant with a legal defense to such suit including reasonable attorney fees, investigatory costs, and other related expenses. Should any such employee be cast in judgment for damages in such suit, it shall be the obligation of the school board employing such defendant to indemnify him fully against such judgment including all principal, interest, and costs, except that the school board shall not be responsible for any costs which the court stipulates are to be borne by a party other than the employee or school board.

6

employee's duties as defined by the school board in which the school employee is employed and was within the specific guidelines for school employee behavior as established by that school board.

However, an exception to this rule is provided by La.R.S. 17:439(D), which states:

> The provisions of this Section shall not apply to the negligence of any school employee operating a motor vehicle, to the extent that liability for such negligence is covered by insurance or self-insurance.

It is undisputed that Mr. Thibeaux was a "school employee operating a motor vehicle" as contemplated by La.R.S. 17:439(D) and that Mr. Thibeaux was solely at fault in causing the accident. However, we must determine whether and to what extent Mr. Thibeaux's "liability for such negligence is covered by insurance or self-insurance." We first note that, while Mr. Miller asserted claims against Colony as Mr. Thibeaux's alleged liability insurer, those claims were dismissed with prejudice and the dismissal has not been raised on appeal.[3] Therefore, Mr. Miller has no claim against Colony, and we consider only the extent of coverage the AAIC policy provided to *Mr. Miller*.

"Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment." *Bernard v. Ellis*, 11-2377, p. 9 (La. 7/2/12), 111 So.3d 995, 1002. Insurance policy interpretation is governed by the following principles:

> An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.

---

[3] In September 2012, Mr. Miller sought supervisory writs, and a panel of this court chose not to exercise supervisory jurisdiction as the judgment was final and appealable. However, this court found that Mr. Miller's notice of intent to seek supervisory writs could be considered as a timely motion to appeal, but that Mr. Miller was still required to obtain a return date from the trial court and pay the filing fees of the appellate court. Mr. Miller has apparently chosen not to go forward with the appeal of this judgment and therefore the issue has been abandoned.

7

Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion.

. . . .

Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretation[s].

. . . .

If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. The determination of whether a contract is clear or ambiguous is a question of law.

*Cadwallader v. Allstate Ins. Co.*, 02-1637, pp. 3-4 (La. 6/27/03), 848 So.2d 577, 580 (citations omitted).

It is undisputed that AAIC issued a "Retained Limit Policy" to *LPSB* that was in effect at the time of the subject bus accident. The policy includes several parts, including a general liability coverage part, an automobile liability coverage part, and a wrongful act coverage part.

The "Insuring Agreements" paragraph of each of the three coverage parts states (original emphasis removed, our emphasis added):

In return for the payment of the premium, we agree with <u>you</u> to provide indemnification for the Ultimate Net Loss in excess of the Retained Limit <u>for which you become legally obligated to pay</u> . . . ."

8

In addition, paragraph G of the "Liability Conditions, Definitions, and Exclusions" section of the policy, which is applicable to all coverage parts, provides (original emphasis removed, our emphasis added):

G.	When Ultimate Net Loss is payable

This policy will NOT apply <u>until you are obligated to pay</u> the amount of the Retained Limit covered under this policy.  When the amount of Ultimate Net Loss has finally been determined . . . , we will promptly indemnify you the amount of the Ultimate Net Loss covered under this policy.

The "Retained Limit Policy" section, which is also applicable to all coverage parts, states, "[t]hroughout this policy the words 'you' and 'your' refer to the **Named Insured**."  The term "Named Insured" is defined as "[a] person or organization named in item 1. of the Declarations[,]" and  Item 1 of the Declarations lists <u>only</u> "Lafayette Parish School Board[.]"

The terms "Ultimate Net Loss," and "insured" are also defined in the "Liability Conditions, Definitions, and Exclusions" section of the policy, which is applicable to all coverage parts.  "Ultimate Net Loss" is defined as:

The sums for which an **insured** is legally liable by reasons of a judgment, or an arbitration award entered as a judgment, or a settlement executed by you and the claimant . . . arising out of an **Accident**, **Occurrence**, or **Wrongful Act**.

"Insured" is defined as any of the following:

a.  The First Named Insured, and any other Named Insured;
b.  While acting within the scope of their duties for the First Named Insured and any other Named Insured:

. . . .

(3) All of your current or former employees

. . . .

e.  With respect to a Covered Automobile, any person is an insured under the Automobile Liability Coverage Part while operating the Covered Automobile with your permission

9

We find that the above terms of the policy clearly and unambiguously obligate AAIC to indemnify only *LPSB*, and only to the extent that *LPSB* is legally liable for an "insured's" liability over the amount of the retained limit, up to the policy limits. Even though Mr. Thibeaux is an "insured" as defined in the policy, coverage is dependent on a finding that LPSB is legally obligated to pay for Mr. Thibeaux's negligence, and any legal obligation LPSB has to pay for Mr. Thibeaux's negligence is necessarily limited by the statutory cap on damages provided by La.R.S. 13:5106. Moreover, AAIC is not obligated to indemnify, or otherwise provide separate liability coverage to, *Mr. Thibeaux* for any amounts over that which LPSB is legally obligated to pay.

In *Credit v. Richland Parish School Bd.*, 11-1003, p. 14 (La. 3/13/12), 85 So.3d 669, 679, the supreme court interpreted La.R.S. 17:439(D), and held that it allowed a direct cause of action against a bus driver, but only "to the extent he is covered by insurance or self-insurance, and only up to the policy limits thereof." The *Credit* court further stated:

> Because [the bus driver] was insured at the time of the accident, we find the plain language of the statute provides for a direct cause of action against him to the extent liability for his alleged negligent actions in operating the motor vehicle is covered by the State Farm insurance policy or self-insurance. Pursuant to La. R.S. 17:416.4(A), the Richland Parish School Board will be required to indemnify and defend [the bus driver] for any liability in excess of his insurance or self-insurance limits.

*Id.*, at 679-680.

However, unlike the policy at issue in *Credit,* the AAIC policy at issue in this case does not afford Mr. Thibeaux any separate liability or indemnity coverage for damages exceeding the amounts that LPSB can be liable to pay, or, in other words, for any damages over the statutory cap provided by La.R.S. 13:5016. Therefore, under *Credit*, Mr. Miller has no direct action against Mr. Thibeaux for

10

damages over the statutory cap, since he is not covered by insurance or self-insurance for any such amounts.

Accordingly, we reverse the trial court's partial summary judgment granted in favor of Mr. Miller. We further grant partial summary judgment in favor of Defendants and limit any damages awarded against Defendants to any remaining amount of the single $500,000 statutory cap provided by La.R.S. 13:5106, after taking into consideration any payments that Defendants already made to Ms. Jagneaux.

## 4. Damages

Mr. Miller argues that that the amount of damages the trial court awarded to him was abusively low. This issue is moot if in fact the total amount Defendants have already paid to Ms. Jagneaux and the damages awarded to Mr. Miller exceed $500,000 as Defendants' suggest. However, because evidence of the amounts paid to Ms. Jagneaux does not appear in the record, we will consider this assignment of error.

The Louisiana Supreme Court has stated the standard of review for an award of damages:

> Vast discretion is accorded the trier of fact in fixing general damage awards. La. Civ.Code art. 2324.1; *Hollenbeck v. Oceaneering Int., Inc.,* 96-0377, p. 13 (La.App. 1 Cir. 11/8/96); 685 So.2d 163, 172. This vast discretion is such that an appellate court should rarely disturb an award of general damages. *Youn v. Maritime Overseas Corp.,* 623 So.2d 1257, 1261 (La. 1993), *cert. denied,* 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. *Youn,* 623 So.2d at 1260. As we explained in *Youn:*
>
> > Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff

under the particular circumstances that the appellate court should increase or decrease the award.

*Id.* at 1261.

The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. *Cone v. National Emergency Serv. Inc.,* 99–0934 (La. 10/29/99), 747 So.2d 1085, 1089; *Reck v. Stevens,* 373 So.2d 498 (La.1979). Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v. Winston Indus., Inc.,* 341 So.2d 332 (La.1976).

*Duncan v. Kansas City Southern Ry. Co.*, 00-66, pp. 13-14 (La. 10/30/00), 773 So.2d 670, 682-683.

### Survival Damages:

Mr. Miller first contends that the $50,000 in damages awarded for his survival action was abusively low.

The survival action permits recovery only for the damages suffered by the victim from the time of injury to the moment of death. The elements of damage for the survival action are pain and suffering, loss of earnings, and other damages sustained by the victim up to the moment of death. Fright, fear, or mental anguish while an ordeal is in progress is also legally compensable.

*Broussard v. Medical Protective Co.*, 06-331, p. 6 (La.App. 3 Cir. 2/21/07), 952 So.2d 813, 818 (citations omitted).

In its oral reasons for the ruling, the trial court stated:

In regards to the survival action, I am going to award damages for the survival action, because however a slight period of time there was, I would say an estimate of anywhere from one (1) to three (3) to four (4) seconds, depending on how long that period of time lasted where he was drug by the bus. There was no doubt some fear, anxiety and panic and so forth from the child, and the case law is clear that that is then allowable in a survival action. But I am, since it was such a short period of time, I am going to minimize that by awarding Fifty Thousand Dollars ($50,000.00).

Mr. Miller specifically takes issue with the trial court basing the amount of the award on its factual finding that La'Derion was dragged by the bus between one and four seconds.

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.

*Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989).

Mr. Miller argues that the trial court's conclusion was erroneous because the investigating officer, Shawn Falke, testified that there was approximately eighty-one feet, nine inches, between the middle of the driveway where La'Derion attempted to board the bus and the spot in the road where blood was found. Based on this, Mr. Miller argues that we should conclude that the incident lasted at least thirty seconds, and therefore increase the amount of damages awarded.

However, we find that the record reasonably supports a finding that La'Derion was conscious for only up to four seconds between the time he became trapped in the bus's door and then run over. There was very limited evidence presented regarding the length of time of the accident, despite Mr. Miller's burden of proof. Officer Falke repeatedly testified that he did not perform any calculations pertaining to the speed of the bus or the time that lapsed during the incident. No expert testimony on the issue was presented.

La'Derion's, mother Heather Jagneaux, who was outside supervising La'Derion and his cousin as they waited for the bus, testified that as soon as she saw La'Derion "put his foot on the rail," she turned around to walk back towards the house. She then heard him call out to her, turned back around, and then witnessed him being released from the bus and run over. She ran and picked him

13

up and brought him back to the yard. She testified that she did not know how long it took from the time he called out to her until the time she picked him up.

Nichole Jagneaux, Heather's sister, who lived with her at the time of the accident, was inside their house with the door opened while Heather waited with the children for the bus. She testified that she heard Heather scream out La'Derion's name, and she ran outside. She stated that when she ran outside, Heather had already picked up La'Derion and was coming back toward the house. As to the amount of time that elapsed, she testified on cross examination as follows:

> Q. . . . . Now you said you heard Heather screaming, 'La'Derion', right, and you jumped over your daughter to go outside, right?
>
> A. Yeah.
>
> Q. Is it fair to say that the time period was a few seconds?
>
> A. Yeah, it was a short time.
>
> Q. But as soon as you heard it, you jumped into action; is that right?
>
> A. Yeah.
>
> Q. And you ran out the house; is that right?
>
> A. Yeah.
>
> Q. And that's when you saw Heather was already carrying La'Derion back towards the house, right?
>
> A. Yeah.
>
> Q. So the time from when you got to the front door to when you first laid eyes on La'Derion, it was a very short period of time, right?
>
> A. Yes.
>
> Q. Is it fair to say that it was no more than a second or two?
>
> . . . .
>
> A. I don't know if it was seconds. It had to be five (5), but I don't know if it was seconds or not.

14

Q. But it was only the time period between when you - - (interrupted)

A. How long it took me to stand up and run. That's how long it was.

This was the only testimony presented as to the amount of time that lapsed between La'Derion's arm getting caught in the door and him being run over by the bus, and reasonably supports the trial court's conclusion.

Mr. Miller also notes that the time of death reported by the hospital was nearly forty-five minutes after the time of the accident took place, and he suggests that the EKG report shows some heart activity while La'Derion was at the hospital. He then argues that the trial court should have considered the amount of time between La'Derion becoming unconscious on impact and the actual time of death, when determining the amount of damages.

Nichole Jagneaux, who had a medical background, testified that La'Derion was unresponsive from the moment she saw him, that he had a faint pulse, that she performed CPR on him until the paramedics arrived, and that he never regained consciousness. There is no other evidence suggesting that La'Derion ever regained consciousness following the accident. Moreover, the coroner, Keith Talamo, did not confirm, or otherwise comment on the time of death provided by the hospital, as he was not involved in that determination. On multiple occasions, Mr. Talamo refused to offer any opinion as to what the EKG report reflected since it was not a record of his actions and he was unaware of what was occurring at the time the report was generated. Mr. Talamo further refused to confirm that the EKG report actually showed heart activity, and indicated that any heart activity the report did show could have been the result of CPR being administered.

Therefore, we cannot say that the trial court was manifestly erroneous, or otherwise abused its discretion, in not considering any time that elapsed from the

15

moment La'Derion became unconscious until his reported time of death. We therefore affirm the trial court's award of damages for Mr. Miller's survival action.

***Wrongful Death Damages:***

Mr. Miller also argues that the $250,000 in wrongful death damages was abusively low. "The elements to consider in making an award of wrongful death damages include loss of love and affection, loss of services, loss of support, medical expenses, and funeral expenses." *Raymond v. Government Employees Ins. Co.*, 09-1327, pp. 14-15 (La.App. 3 Cir. 6/2/10), 40 So.3d 1179, 1191, *writ denied*, 10-1569 (La. 10/08/10), 46 So.3d 1268. In its oral reasons for ruling, the trial court stated as follows:

> In regards to wrongful death, of course we heard conflicting testimony of how close you [Mr. Miller] were to your child. I believe you were closer to your child at the beginning and I believe that relationship pretty much fell apart, maybe not because of our own fault but because of not being together with the mother. And I think the truth lies somewhere in the middle of both sides of the testimony. I am going to award Two Hundred Fifty Thousand Dollars ($250,000.00) for wrongful death.

Mr. Miller argues that the trial court erred because there was ample evidence of a close relationship between himself and La'Derion, including testimony that they, along with Heather, lived together as a family for three to four years before his relationship with Heather ended, and that he saw La'Derion on a regular basis thereafter. However, as noted by the trial court, there was conflicting evidence regarding the amount of time Mr. Miller saw La'Derion. In fact, on cross examination, Mr. Miller indicated that, in the two years prior to La'Derion's death, he saw La'Derion no more than two or three times per month for no more than thirty minutes at a time, and that he had not seen La'Derion at all during the month prior to La'Derion's death.

16

Therefore, we cannot say that the trial court's conclusion as to the relationship between Mr. Miller and La'Derion was manifestly erroneous, or that the award of damages based on that finding was abusively low.

*Reduction of Damages to Statutory Cap*

On appeal, Defendants urge us to reduce the amount of damages awarded to $225,000, arguing that that is the remaining amount of the $500,000 statutory cap on damages that is available after considering the amounts already paid to Ms. Jagneaux. However, while we find that both Ms. Jagneaux's and Mr. Miller's claims against AAIC, LPSB, and Mr. Thibeaux are limited to a single $500,000 statutory cap as noted above, there is insufficient evidence in the record for us to conclude the amount of the statutory cap that is left after considering amounts already paid to Ms. Jagneaux. Therefore, we must remand this issue to the trial court.

## DECREE

For the reasons stated herein, we reverse the trial court's partial summary judgment granted in favor of Mr. Miller. We further render partial summary judgment in favor of Defendants declaring that the claims against them are subject to a single $500,000 statutory cap on damages provided by La.R.S. 13:5106. While we affirm the amount of damages, we remand this matter for a determination as to what amount, if any,

against Defendants should be reduced so as to not exceed the statutory cap, after considering the amounts already paid to Ms. Jagneaux. Costs of this appeal are assessed to Mr. Miller.

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**

17