STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 CA 1111

**GULF PRODUCTION COMPANY, INC.**

**VERSUS**

**HALLIBURTON ENERGY SERVICES, INC. AND ROBERT PEATROSS**

Judgment Rendered: **AUG 0 6 2024**

* * * * * * *

On Appeal from the 22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Trial Court Docket Number 2013-12663, Div. "F"

Honorable Vincent J. Lobello, Judge Presiding

* * * * * * *

John M. Robin                              Counsel for Plaintiff/Appellant,
Zachary D. Rhodes                          Gulf Production Company, Inc.
Catherine M. Robin
Covington, Louisiana


Kyle P. Kirsch                             Counsel for Defendants/Appellees,
E. Madison Barton                          Halliburton Energy Services, Inc. and
Samantha S. Boudreaux                      Robert Peatross
Michael R. Sistrunk
Craig J. Canizaro
New Orleans, Louisiana

* * * * * * *

**BEFORE: THERIOT, PENZATO, AND GREENE, JJ.**

Theriot, J. concurs

**PENZATO, J.**

Gulf Production Company, Inc. appeals from the trial court's March 13, 2023 judgment that pertinently sustained a peremptory exception of no right of action in favor of Halliburton Energy Services, Inc. and Robert Peatross and against Gulf Production, and granted summary judgment in favor of Halliburton and Mr. Peatross and against Gulf Production, and dismissed all claims asserted by Gulf Production against Halliburton and Mr. Peatross with prejudice. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Gulf Production entered an operating agreement with Gulf Explorer, LLC in November 2010, which pertinently named Gulf Production as the operator for oil and gas drilling operations on land in Plaquemines Parish, Louisiana, referred to as the Horseshoe Bayou Prospect.[1] Gulf Explorer had previously entered an agreement to lease with Mobil Oil Exploration and Producing Southeast, Inc. concerning the Horseshoe Bayou Prospect. Pursuant to the agreement to lease, Gulf Explorer was to conduct oil and gas drilling operations on the Horseshoe Bayou Prospect. If certain conditions were satisfied, particularly, if Gulf Explorer drilled an earning well, Gulf Explorer would be granted a lease on the property.

Gulf Explorer instructed its operator, Gulf Production, to permit and drill two wells on the Horseshoe Bayou Prospect. After Gulf Production drilled the ExxonMobil Fee No. 2 well in May 2011, Mobil Oil and Gulf Explorer entered an oil and gas lease for the Horseshoe Bayou Prospect, effective May 28, 2011. Gulf Explorer then instructed Gulf Production to drill the ExxonMobil Fee No. 3 well. According to Gulf Production, Halliburton provided a coring gun for the

---

[1] The property was located at Township 21 South – Range 20 East, Portions of Sections 15 & 16, compromising 528 acres, more or less.

2

ExxonMobil Fee No. 3 well, which allegedly became stuck in the well during coring operations. Various problems were encountered during efforts to retrieve the coring gun, which allegedly caused additional damages.

Gulf Production subsequently filed suit against Halliburton and Robert Peatross, Halliburton's account representative (collectively, "Halliburton"), in June 2013.[2] Gulf Production alleged that it contracted with Halliburton to provide expertise for coring services and that it sustained damages, including loss of time, expense, and profits, due to Halliburton's negligence.[3] Gulf Explorer was not named or mentioned in the petition, and there is no indication that any party other than Gulf Production sustained or sought to recover damages from Halliburton.

Halliburton answered Gulf Production's suit and asserted a reconventional demand against Gulf Production seeking to recover amounts purportedly owed by Gulf Production for services rendered by Halliburton and/or labor, rentals, and oil well supplies provided by Halliburton in connection with the ExxonMobil Fee No. 3 well.

Extensive discovery was conducted, and numerous court proceedings occurred over the next nine years. In September 2022, the trial court heard argument on Halliburton's motion in limine concerning Gulf Production's percentage of well ownership. The trial court took the matter under advisement and instructed the parties to submit additional briefing. In November 2022, in connection with this motion in limine, the trial court ordered Gulf Production to produce "all evidence of any agreement involving Gulf [Production] and the co-owners of the mineral rights related to agency, representation, and/or ownership percentage of mineral rights

---

[2] Gulf Production alleged that Mr. Peatross was negligent and/or misrepresented what equipment would be provided and used by Halliburton on the ExxonMobil Fee No. 3 well.

[3] Gulf Production also alleged that it contracted with Halliburton for "Instrument Protection" insurance, which Halliburton refused to honor.

(including the working interest agreements and the net profit interest agreement), and any agreement transferring mineral rights in the well to its owners."

In response, Gulf Production filed a supplemental brief in opposition to Halliburton's motion in limine and attached an assignment between Gulf Explorer and Gulf Production dated April 25, 2013, wherein Gulf Explorer assigned "its litigious rights and delegate[d] the authority to Gulf Production Company, Inc. to file suit against Halliburton for the damages caused by Halliburton to the ExxonMobil Fee No. 3 ST Well."[4] J. Randolph Robin executed the assignment on behalf of both entities, appearing as managing member of Gulf Explorer and president of Gulf Production. The Mobil Oil/Gulf Explorer agreement to lease, the Mobil Oil/Gulf Explorer oil and gas lease, and the Gulf Explorer/Gulf Production operating agreement were also attached to Gulf Production's supplemental opposition. Prior to November 2022, Gulf Production had not disclosed its status in this litigation as Gulf Explorer's assignee.

After learning about the assignment and receiving these additional documents, Halliburton asserted a peremptory exception of no right of action and filed a motion for partial summary judgment. Halliburton argued that Gulf Production had no right of action to assert a contract or tort claim as Gulf Explorer's assignee because, among other reasons, the petition failed to allege assignment. Halliburton further asserted that Gulf Production suffered no damages and, therefore, had no right of action to sue Halliburton in tort. For the same reason, Halliburton sought to dismiss Gulf Production's contract claim through its motion for partial summary judgment.

---

[4] The assignment is silent as to claims against Mr. Peatross. According to J. Randolph Robin's affidavit, Gulf Explorer orally amended the assignment sometime after April 25, 2013 and before suit was filed to delegate authority to Gulf Production to include any causes of action for damages Gulf Explorer may have against Mr. Peatross.

4

Gulf Production opposed the exception and the motion, and a contradictory hearing was held in February 2023. The trial court heard argument of counsel and admitted the parties' documentary evidence into the record, including the assignment; the lease agreements; the operating agreement; the affidavit of Mr. Robin, Gulf Explorer's co-owner and managing member and Gulf Production's president; and the affidavit of James Chris Severson, Gulf Explorer's co-owner and managing member and Gulf Production's vice-president/treasurer. At the conclusion of the hearing, the trial court sustained Halliburton's exception of no right of action and granted its motion for partial summary judgment. A written judgment in accordance with this ruling was signed on March 13, 2023, dismissing Gulf Production's claims against Halliburton and Mr. Peatross with prejudice. Gulf Production timely filed this appeal.

## APPELLATE JURISDICTION

In its appellee brief, Halliburton asserts that the March 13, 2023 judgment is not a final, appealable judgment because Halliburton's reconventional demand is pending before the trial court. This court's appellate jurisdiction extends only to final judgments, which determine the merits in whole or in part, and to interlocutory judgments made expressly appealable by law. See La. C.C.P. arts. 1841 and 2083; *4 C's Land Corp. v. Columbia Gulf Transmission Co.*, 2021-0121 (La. App. 1st Cir. 10/21/21), 332 So.3d 123, 126, *writ denied*, 2021-01735 (La. 1/19/22), 331 So.3d 322. A judgment that only partially determines the merits of an action will constitute a partial final judgment that is immediately appealable only if authorized by La. C.C.P. art. 1915; *4 C's Land Corp*, 332 So.3d at 126.

Halliburton's reconventional demand was asserted pursuant to La. C.C.P art. 1061(B), which pertinently states that the defendant in the principal action shall assert in a reconventional demand all causes of action the defendant may have

5

against the plaintiff that arise out of the transaction or occurrence that is the subject matter of the principal action. Louisiana Code of Civil Procedure Article 1915(A)(4) provides that a final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for or may not adjudicate all of the issues in the case, when the court signs a judgment on either the principal or incidental demand when the two have been tried separately as provided by La. C.C.P. art. 1038. Louisiana Code of Civil Procedure Article 1038 states,

> The court may order the separate trial of the principal and incidental actions, either on exceptions or on the merits; and after adjudicating the action first tried, shall retain jurisdiction for the adjudication of the other.
> When the principal and incidental actions are tried separately, the court may render and sign separate judgments thereon. When in the interests of justice, the court may withhold the signing of the judgment on the action first tried until the signing of the judgment on the other.

The transcript from the February 2023 hearing reflects that the trial court did not consider any dispositive motions, evidence, or testimony related to Halliburton's reconventional demand; nevertheless, Gulf Production's principal demand against Halliburton was dismissed in its entirety, with prejudice.[5] Consequently, we find the matters were tried separately pursuant to La. C.C.P. art. 1038, which triggered the application of La. C.C.P. art. 1915(A)(4). See *White v. Cox Operating, LLC*, 2016-0901 (La. App. 4th Cir. 4/5/17), 229 So.3d 534, 537. Therefore, the March 13, 2023 judgment is final and appealable.

## ISSUES ON APPEAL

Gulf Production did not assign error to the portion of the March 13, 2023 judgment that granted Halliburton's motion for partial summary judgment nor did it

---

[5] The record also reflects that Halliburton filed an opposition to Gulf Production's motion for appeal in the trial court, arguing, for the same reason, that the March 13, 2023 judgment was not final and appealable. The trial court denied Halliburton's opposition as moot, noting Gulf Production had already been granted an appeal.

identify this ruling as an issue for review. Gulf Production's appellant brief does not discuss the merits of Halliburton's motion for partial summary judgment, and Gulf Production does not allege that a genuine issue of material fact remains, making the granting of the motion improper.[6] Gulf Production's brief is silent as to the motion for partial summary judgment. Because Gulf Production did not raise this issue on appeal, we do not consider whether the trial court erred by granting Halliburton's motion for partial summary judgment. See Rule 2-12.4, Uniform Rules for Louisiana Courts of Appeal; see also *In re Interdiction of Cockerton*, 2021-1316 (La. App. 1st Cir. 4/8/22), 341 So.3d 834, 838 (Even if an assignment of error is stated, the issue may be considered abandoned if not briefed pursuant to Rule 2-12.4(B)(4), Uniform Rules of Louisiana Courts of Appeal.).

Gulf Production asserts on appeal that the trial court erred by sustaining Halliburton's exception of no right of action based on several erroneous factual findings, including the trial court's conclusion that "[o]nly Gulf Explorer sustained damages and Gulf Production had no losses."[7] Gulf Production further argues the trial court erred by denying its request for leave to amend its petition. Finally, Gulf Production asserts the trial court erred by failing to join Gulf Explorer as an "indispensable party" (i.e., a party needed for just adjudication) on its own motion, after opining that Gulf Explorer was a proper party. See La. C.C.P. arts. 641, 642, and 927(A)(4) and (B).

---

[6] As to the issue raised in Halliburton's motion for partial summary judgment, i.e., Gulf Production's contract claim on its own behalf, Gulf Production asserts only that it had a contract with Halliburton and states, "Accordingly, Gulf Production's cause of action is also based on a breach of contract for damages."

[7] On appeal, Gulf Production also seeks review of an interlocutory judgment rendered by the trial court granting two motions in limine filed by Halliburton and excluding evidence related to Gulf Production's principal demand (cost overruns and historical pricing data). Additionally, Gulf Production seeks review of the interlocutory judgment granting Halliburton's Daubert motion and excluding testimony from Robert Raterman, Gulf Production's expert who offered opinions concerning mistakes allegedly made by Halliburton related to the coring gun. Because we affirm the dismissal of Gulf Production's claims against Halliburton, we do not address the merits of these interlocutory judgments, which relate only to Gulf Production's principal demand.

## EXCEPTION OF NO RIGHT OF ACTION

Except as otherwise provided by law, an action can only be brought by a person having a real and actual interest which he asserts. La. C.C.P. art. 681. The exception of no right of action tests whether the plaintiff, as a matter of law, has an interest in judicially enforcing the right asserted. La. C.C.P. art. 927(A)(6); *Pearce v. Lagarde*, 2020-1224 (La. App. 1st Cir. 10/7/21), 330 So.3d 1160, 1166-67, *writ denied*, 2022-00010 (La. 2/22/22), 333 So.3d 446. The exception does not raise the question of the plaintiff's ability to prevail on the merits or whether the defendant may have a valid defense. *Pearce*, 330 So.3d at 1167.

The party raising a peremptory exception of no right of action bears the burden of proof. To prevail, the defendant must show the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with the suit. *Pearce*, 330 So.3d at 1167. Evidence supporting or controverting an exception of no right of action is admissible for the purpose of showing the plaintiff does not possess the right claimed or the right does not exist. See La. C.C.P. art. 931; *Pearce*, 330 So.3d at 1167. Where doubt exists regarding the appropriateness of an exception of no right of action, it is to be resolved in favor of the plaintiff. *Pearce*, 330 So.3d at 1167.

Generally, the trial court's ruling sustaining an exception of no right of action is reviewed *de novo* on appeal, because it involves questions of law. However, when evidence is introduced to support or controvert an exception of no right of action, factual findings are reviewed under the manifest error standard of review.[8] *Pearce*, 330 So.3d at 1167.

---

[8] To reverse a fact finder's determination under the manifest error standard, an appellate court must review the record in its entirety and find that a reasonable factual basis does not exist for the finding and further determine that the record establishes the fact finder is clearly wrong or manifestly erroneous. *Fabre v. Manton*, 2021-1418 (La. App. 1st Cir. 6/28/22), 343 So.3d 821, 827 n.5.

***Gulf Production's Right of Action to Assert a Tort Claim on Its Own Behalf***

The trial court concluded that Gulf Production does not have a real and actual interest in the claims asserted and sustained Halliburton's exception of no right of action concerning Gulf Production's tort claims asserted on its own behalf. See La. C.C.P. art. 681. Although the face of Gulf Production's petition alleges a tort cause of action on its own behalf, the evidence admitted during the hearing on Halliburton's exception, as well as judicial confessions made by Gulf Production's counsel, confirm that Gulf Production has no legal interest in this proceeding and, instead, filed suit to recover damages sustained by Gulf Explorer.

A judicial confession is a declaration made by a party in a judicial proceeding, which constitutes full proof against the party who made it. La. C.C. art. 1853. A judicial confession must be explicit and cannot be implied. *M & R Drywall, Inc. v. MAPP Construction, LLC*, 2017-0186 (La. App. 1st Cir. 4/29/19), 280 So.3d 260, 285, *writs denied*, 2019-01325, 2019-01403, 2019-01411 (La. 11/19/19), 282 So.3d 1073, 1074. A judicial confession has the effect of waiving evidence relating to the subject matter of the admission and withdrawing the subject matter of the confession from issue. *Cichirillo v. Avondale Industries, Inc.*, 2004-2894 (La.11/29/05), 917 So.2d 424, 429. A declaration made by a party's attorney has the same effect as one made by the party himself. La. C.C. art. 1853, Comment (b); *C.T. Traina, Inc. v. Sunshine Plaza, Inc.*, 03-1003 (La. 12/3/03), 861 So.2d 156, 159. Responses by counsel to questions posed by the court may constitute judicial confessions, relieving the opposition of the necessity of introducing evidence. See *Compensation Specialties, L.L.C. v. New England Mutual Life Ins. Co.*, 2008-1549 (La. App. 1st Cir. 2/13/09), 6 So.3d 275, 281, *writ denied*, 2009-0575 (La. 4/24/09), 7 So.3d 1200; *Cichirillo*, 917 So.2d at 430. See also *M & R Drywall, Inc.*, 280 So.3d at 285

9

(finding counsel's acknowledgement in open court that an insurer defendant was entitled to a credit before coverage was triggered was a judicial confession).[9]

During the February 2023 hearing, counsel for Gulf Production admitted that Gulf Production did not sustain damages and, instead, filed suit as Gulf Explorer's assignee to recover damages sustained by Gulf Explorer. Specifically, the following exchange occurred during the February 2023 hearing:

| | |
|---|---|
| *Court*: | So, you're agreeing that Gulf Production is not alleging any damages. The damages are all Explorer. |
| *Counsel for Gulf Production*: | Gulf Production is bringing -- |
| *Court*: | An action to recover Explorer's damages, exclusively. |
| *Counsel for Gulf Production*: | Based on its relationship with Explorer. |
| *Court*: | But the damages that you're alleging were sustained by Explorer? |
| *Counsel for Gulf Production*: | Yea, but the money was going through Gulf Production and Gulf Production would be compensated for its efforts.[10] |

---

[9] In *Bardwell v. Faust,* 2006-1472 (La. App. 1st Cir. 5/4/07), 962 So.2d 13, 21 n.7, *writ denied,* 2007-1174 (La. 9/21/07), 964 So.2d 334, counsel judicially confessed to the accuracy of material dates during argument before the trial court. In *Federal Work Ready, Inc. v. Wright,* 2019-0752 (La. App. 4th Cir. 4/22/20), 299 So.3d 140, counsel admitted before the trial court that his client, the plaintiff, was bankrupt and incapable of purchasing the property at issue in the plaintiff's suit for specific performance, which sought to force the defendants to sell the property pursuant to the plaintiff's option to purchase. Raising the exception of no cause of action *sua sponte*, the court of appeal found that counsel's admission served as a judicial confession, supporting the conclusion that the plaintiff had no valid cause of action to pursue. *Federal Work Ready*, 299 So.3d at 149-50. See also *Sweet Lake Land & Oil Co., LLC v. Oleum Operating Co., L.C.,* 2021-169 (La. App. 3d Cir. 12/1/21), 362 So.3d 486, 503-04, *writ granted in part and remanded,* 2022-00497 (La. 9/20/22), 345 So.3d 1022 (finding defense counsel admitted responsibility for regulatory cleanup during opening and closing arguments). Note, the issues determined on remand in *Sweet Lake* are immaterial to the present appeal. See *Sweet Lake Land,* 354 So.3d 740.

[10] The operating agreement requires Gulf Production to pay expenses and charge each party its respective share of expenses. The operating agreement allows Gulf Production to charge a monthly drilling rate of $15,000 as compensation for administrative, supervision, and office services and warehousing costs. Gulf Production does not contend that it sustained a loss based on the monthly drilling rate.

Halliburton's counsel then resumed argument on the issues before the trial court, asserting that Gulf Production's evidence, particularly Mr. Robin's affidavit, demonstrates that Gulf Production is seeking to recover someone else's damages. In response, the court, referring to Gulf Production's counsel, stated, "It sounds like he is conceding that, I think." Critically, counsel for Gulf Production responded, **"Yes, Your Honor. That's why Gulf Production brought the suit."** (Emphasis added.) Counsel explained that he would not have brought the suit on Gulf Production's behalf if Gulf Explorer had not assigned rights to Gulf Production.

Later, speaking to Gulf Production's counsel, the trial court again confirmed, "[N]ow your position is Gulf Production has no damages, it is Gulf Explorer." Gulf Production's counsel responded, **"Well, yea."** Counsel then explained Gulf Production's role:

> [A]ll the money, all the bills were being paid by Gulf Production. Gulf Production paid for all the remediation that took place after the coring gun got stuck in the hole. They hired wildlife people and **all that money was going through Gulf Production**[.] (Emphasis added.)[11]

This is in line with the operating agreement, which provides that Gulf Production was required to "promptly pay and discharge expenses incurred in the development and operation of the [Horseshoe Bayou Prospect] pursuant to this agreement and **shall charge each of the parties hereto with their respective**

---

[11] The accounting procedures made a part of the operating agreement provide that Gulf Production shall charge the joint account for costs incurred for the benefit of the joint property as a result of governmental or regulatory requirements to satisfy environmental considerations applicable to the joint operations. Such costs may include surveys of an ecological or archaeological nature and pollution control procedures as required by applicable laws and regulations. "Joint property" refers to real and personal property subject to the operating agreement, i.e., the Horseshoe Bayou Prospect. "Joint operations" are all operations necessary for the development, operation, protection, and maintenance of the joint property. Finally, "joint account" means the account showing the charges paid and credits received in the conduct of joint operations, which are to be shared by the parties.

**proportionate shares**...."[12] (Emphasis added) "Parties" as used in the operating agreement appears to refer to "the signatory party or parties **other than the Operator**" who are owners of oil and gas leases and/or oil and gas lease interests in the Horseshoe Bayou Prospect who agreed to explore and develop the leases and/or oil and gas interests for the production of oil and gas. (Emphasis added.) The evidence establishes that Gulf Production does not own the ExxonMobil Fee No. 3 well or hold lease interests in the Horseshoe Bayou Prospect. Additionally, the operating agreement states that the parties' interests are set forth in Exhibit A attached to the operating agreement. Gulf Explorer is the only name that appears on Exhibit A.

The operating agreement states that, except for loss or damage caused by Gulf Production's gross negligence or willful misconduct, Gulf Production has no liability to the parties for losses sustained or liability incurred. Instead, Gulf Production is to charge the joint account for all costs and expenses necessary for the repair or replacement of joint property made necessary because of damage or losses incurred by accident, among other things. Charges to the joint account are shared by the parties. All costs and liabilities incurred in the operations under the operating agreement "shall be borne and paid, and all equipment and materials acquired in operations on the [Horseshoe Bayou Prospect] shall be owned, by the parties" pursuant to their respective interests. Gulf Production was required to bill non-operators for their proportionate share of paid monthly charges and to provide a statement identifying the authority for the expenditure. The operating agreement

---

[12] As another example of money going "through" Gulf Production, Gulf Production's counsel explained during the September 2022 hearing on Halliburton's motion in limine regarding Gulf Production's percentage of well ownership that "if the well produces, all the revenue from the well goes to Gulf [Production] and then Gulf [Production] distributes the revenue to the working interest partners in accordance with their percentage of ownership." This is supported by the operating agreement, which pertinently states that the operator shall hold proceeds from production attributable to a non-operator in trust and distribute them to the non-operator.

gives Gulf Production the right to enforce a lien if any party fails or is unable to pay its proportionate share of costs for drilling, reworking, deepening, testing, completing, or plugging operations on the Horseshoe Bayou Prospect.[13]

Finally, through this suit, Gulf Production seeks to recover over $4.1 million in purported cost overruns. However, the operating agreement pertinently states that, in the event of a cost overrun of 25% or more of the total amount approved in the authority for expenditure, Gulf Production is to provide the "consenting parties" with a supplemental authority for expenditure for their approval. A "consenting party" is a party who agrees to join in and pay its share of costs of any operation conducted under the provision of the operating agreement.

The affidavits of Mr. Robin and Mr. Severson also support counsel's admission that Gulf Production filed suit solely to recover Gulf Explorer's damages. These corporate executives attested that Halliburton damaged the ExxonMobil Fee No. 3 well, causing "financial hardship for Gulf Explorer, LLC," the owner of the well. Mr. Robin and Mr. Severson did not attest that Gulf Production has an interest in this litigation and stated only that Gulf Production filed suit "in its capacity as Operator." They offered conclusory allegations, particularly that, as operator and in accordance with the terms of the operating agreement, Gulf Production had "the right and obligation to bring a cause of action for damages associated with the drilling of the [ExxonMobil Fee No. 3 well] and as such, had the right of action to file suit against Halliburton and Robert Peatross."

Mr. Robin and Mr. Severson explained that, as required by Article X of the operating agreement, Gulf Explorer delegated its authority to Gulf Production to sue Halliburton and/or any other person or entity responsible for any damages to the

---

[13] The operating agreement provides that each non-operator grants a lien to Gulf Production upon its oil and gas rights, a security interest in its share of oil and gas when extracted, and its interest in all equipment to secure payment of its share of expenses, together with interest.

13

ExxonMobil Fee No. 3 well. Article X, entitled "Claims and Lawsuits," pertinently gives Gulf Production the authority to settle certain claims if the expenditure does not exceed $20,000.00. If the settlement exceeds this amount, the "parties hereto shall assume and take over the further handling of the claim or suit, unless such authority is delegated to Operator." While this provision may be the source of authority or reason for the assignment, it does not establish that Gulf Production has an interest in this litigation.

Thus, the record supports the trial court's conclusion that Gulf Production does not have a real and actual interest in the tort claims asserted. See La. C.C.P. art. 681. The trial court properly sustained Halliburton's exception of no right of action, dismissing the tort claims asserted by Gulf Production on its own behalf.

### Gulf Production's Right of Action to Assert Claims as Gulf Explorer's Assignee; Denial of Leave to Amend to Plead Assignment

The trial court sustained Halliburton's exception of no right of action, finding Gulf Production's petition "fails to allege any assignment of any rights whatsoever [by] Gulf Explorer." Gulf Production's counsel conceded as much during the February 2023 hearing, admitting, "It wasn't pled."

After reviewing the petition, we agree and find it was necessary for Gulf Production to assert its status as assignee in the petition and to plead facts sufficient to put Halliburton on notice that claims were being asserted to recover damages allegedly sustained by Gulf Explorer. Due process requires adequate notice to the parties of the matters to be adjudicated. *Udomeh v. Joseph*, 2011-2839 (La. 10/26/12), 103 So.3d 343, 349. A party may be granted any relief to which he is entitled so long as the facts pled gave the opposing party adequate notice of the existence of potential causes of action. *Miller v. Thibeaux*, 2014-1107 (La. 1/28/15), 159 So.3d 426, 432; *Joiner v. Brown*, 2014-1077 (La. App. 1st Cir. 4/24/15), 2015

14

WL 1882538, *4 (unpublished). The petition must set forth material facts upon which the cause of action is based. La. C.C.P. art. 891(A); *Christian Schools, Inc. v. Louisiana High School Athletic Association*, 2020-0762 (La. App. 1st Cir. 5/18/22), 342 So.3d 1068, 1074, *writ denied*, 2022-01015 (La. 10/12/22), 348 So.3d 78.

Due to Gulf Production's failure to plead any facts to suggest it instituted this litigation as Gulf Explorer's assignee, Gulf Production has no right to pursue a tort or contract claim as Gulf Explorer's assignee, and the trial court properly sustained Halliburton's exception of no right of action.

Gulf Production argues the trial court erred by failing to allow it to amend its petition to allege the assignment of rights from Gulf Explorer to Gulf Production. The right to amend a petition following the sustaining of a peremptory exception is not absolute. *Palowsky v. Cork*, 2019-0148 (La. App. 1st Cir. 5/20/20), 304 So.3d 867, 875. The decision to allow amendment pursuant to La. C.C.P. art. 934 is within the sound discretion of the trial court.[14] *Herigodt v. Town of Golden Meadow*, 2020-0752 (La. App. 1st Cir. 2/22/21), 321 So.3d 1004, 1015, *writ denied*, 2021-00880 (La. 10/12/21), 325 So.3d 1070.

Louisiana Code of Civil Procedure Article 934 does not permit amendments to a petition that change the substance of the original claims. *Fortier v. Hughes*, 2009-0180 (La. App. 4th Cir. 6/17/09), 15 So.3d 1185, 1188. The amendment of a petition to allege an entirely new cause of action is not an amplification or clarification of the allegations of the original petition but is a change of substance, which is not the kind of amendment contemplated by Article 934. *Palowsky*, 304

---

[14] Louisiana Code of Civil Procedure Article 934 states, "When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed."

So.3d at 876 n.5. Additionally, amendment is not permitted when it would constitute a vain and useless act. *Palowsky*, 304 So.3d at 875.

In *Fortier*, 15 So.3d at 1188, the defendants' exception of no right of action was sustained as to the plaintiffs' derivative action, and the plaintiffs were denied an opportunity to amend their petition to add a fraud cause of action and a claim that they were third-party beneficiaries of the corporate charter at issue. The original petition did not reference fraud or contain allegations that the plaintiffs were third-party beneficiaries. Additionally, the plaintiffs originally sought injunctive relief, but aimed to amend their petition to assert a claim for damages. "Plaintiffs' proposed amendments do not amplify or clarify their original claim; they change its substance." *Fortier*, 15 So.3d at 1188. Therefore, amendment was not allowed. *Fortier*, 15 So.3d at 1188. See *Ballanco v. Morvant*, 2023-0526 (La. App. 4th Cir. 1/17/24), 382 So.3d 411, 418 (finding the plaintiff was not entitled to amend her petition where she sought to alter the substance of her petition by adding a new cause of action).

In *Massiha v. Beahm*, 2007-0137 (La. App. 4th Cir. 8/15/07), 966 So.2d 87, 90-91, the court refused to allow the plaintiff to amend his petition to assert a new cause of action, since such an amendment would be more than a mere clarification of the original allegations. Therefore, amending the petition would be a vain and useless act. *Massiha*, 966 So.2d at 91. For the same reason, this court found the plaintiffs were not entitled to amend their petition in *Harrell v. State Through Department of Transportation & Development*, 2022-0126 (La. App. 1st Cir. 9/16/22), 2022 WL 4286558, *7 (unpublished).

Like the plaintiffs in these cases, Gulf Production does not seek to amplify or clarify the allegations in its petition. Instead, Gulf Production effectively seeks to change the identity of the plaintiff by asserting an entirely new cause of action as

16

Gulf Explorer's assignee to recover Gulf Explorer's damages. There is no indication in the petition that Gulf Production sought to recover anything other than the damages *it* allegedly sustained due to Halliburton's purported negligence and, perhaps, breach of contract.

The evidence introduced in connection with Halliburton's exception of no right of action establishes that Gulf Explorer is the owner of the ExxonMobil Fee No. 3 well. As such and contrary to Gulf Production's unsupported assertion,[15] Gulf Explorer's potential causes of action and damages differ from those set forth in the original petition filed by and solely on behalf of Gulf Production, the well's operator. For instance, Gulf Production's petition sought to recover financial damages allegedly sustained by Gulf Production, including loss of time, expense, and profits. There is no allegation that Halliburton's actions caused physical damage to the ExxonMobil Fee No.3 well or that Gulf Production was asserting a claim for such damage. However, Mr. Robin's affidavit states that Halliburton damaged the well. Through the assignment, Gulf Explorer delegated authority to Gulf Production to file suit against Halliburton "for damages caused by Halliburton **to the ExxonMobil Fee No. 3 ST Well**." (Emphasis added.)

It is evident that the type of amendment Gulf Production seeks to make is not the kind of amendment contemplated by La. C.C.P. art. 934. See *Palowsky*, 304 So.3d at 876 n.5; *Harrell*, 2022 WL 4286558 at *7. Finding nothing to clarify in Gulf Production's petition, we conclude that an amendment would be a vain and useless act. See *Massiha*, 966 So.2d at 91.

---

[15] During the February 2023 hearing, Gulf Production asserted that Halliburton was not prejudiced by the assignment because "the damages are going to be the same."

Additionally, the trial court articulated its reasons for denying Gulf Production's request to amend its petition during the February 2023 hearing. Stating that it could not ignore the ten-year history of this litigation, the trial court explained,

> During those ten years it is clear to this Court that Gulf Production failed or refused to make timely disclosures and productions of undisputedly relevant documents and information not only pertinent to this case but essential to support [Gulf Production's] claims and essential for Halliburton to defend against these claims. Gulf Production's failure to make these timely disclosures [has] been the sole cause of repeated extensions and cut offs and deadlines as well as continuances of the trial date. Although denying Gulf Production the opportunity to amend its petition may appear to be a harsh remedy under the circumstances of this case, and [especially] in light of Gulf Production's consistent failure to disclose information and documents, this Court finds that allowing it to amend its petition may very well be futile, but more importantly would be unfairly prejudicial to the defendants.

For these reasons, we find the trial court did not abuse its discretion by denying Gulf Production's request for leave to amend.

### Failure to Add Gulf Explorer as a Party Needed for Just Adjudication

Gulf Production asserts on appeal that the trial court should have, on its own motion, joined Gulf Explorer as an "indispensable party" if the court believed Gulf Explorer was a proper party. This argument has no merit. First, there is no indication in the record that the trial court determined that Gulf Explorer was a party needed for just adjudication. See La. C.C.P. arts. 641, 642, and 927(A)(4). Second, La. C.C.P. art. 927(B) authorizes but does not require a trial court to notice an exception of nonjoinder of a party on its own motion. Finally, Gulf Production failed to raise this issue before the trial court, and we decline to consider whether Gulf Explorer is a party needed for just adjudication for the first time on appeal. See *Boone Services, LLC v. Clark Homes, Inc.*, 2023-0299 (La. App. 1st Cir. 10/18/23), 377 So.3d 304, 312 n.6 (As a general rule, an appellate court will not consider issues that were not

raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal.).

## DECREE

For the foregoing reasons, we affirm the March 13, 2023 judgment that pertinently sustained a peremptory exception of no right of action in favor of Halliburton Energy Services, Inc. and Robert Peatross and against Gulf Production Company, Inc., and granted summary judgment in favor of Halliburton Energy Services, Inc. and Robert Peatross and against Gulf Production Company, Inc., and dismissed all claims asserted by Gulf Production Company, Inc. against Halliburton Services, Inc. and Robert Peatross with prejudice. All costs of this appeal are assessed against Gulf Production Company, Inc.

**AFFIRMED.**